(No. 44534.

CHICAGO DIVISION OF THE HORSEMEN'S BENEVO-
LENT & PROTECTIVE ASS'N *et al.*, Appellants, v.
ILLINOIS RACING BOARD *et al.*, Appellees.

*Opinion filed Sept. 20, 1972.—Rehearing denied Nov. 29, 1972.*

WILLIAM J. NELLIS and ROBERT D. BOYLE, both
of Chicago, for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield
(FRANCIS T. CROWE and SAMUEL E. HIRSCH, Assis-
tant Attorneys General, of counsel), for appellees.

MR. JUSTICE WARD delivered the opinion of the
court:

On June 9, 1970, the Illinois Racing Board, after a hearing, adopted an amendment to Rule 131 of the Board's Rules and Regulations of Horse Racing. Rule 131 establishes a schedule of racing fees for jockeys. The effect of the 1970 amendment, the adoption of which was proposed to the Board by the Jockey's Guild, Inc., an association representing jockeys, was to increase the fees previously set under the rule.

The Chicago Division and the Southern Illinois Division of the Horsemen's Benevolent and Protective Association, which claim to represent licensed race horse owners in Illinois, together with Harold Trimble, the vice-president of the Chicago Division, each of whom appeared at the hearing before the Board, filed a complaint in the circuit court of Cook County under the Administrative Review Act (Ill.Rev.Stat. 1971, ch. 110, pars. 264 through 279) asking that Rule 131 be declared unenforceable and illegal. The circuit court agreed, and reversed the order of the Board, holding Rule 131 a "nullity." The judgment of the circuit court was reversed by the appellate court (272 N.E.2d 734), and we granted the plaintiffs' petition for leave to appeal.

In its findings in support of the amendment of Rule 131, the Board recited that the Rule had last been amended in 1961, that between 1961 and 1970 the purchasing power of the dollar had been reduced by 31%, and that the proposed increase would raise jockeys' fees about 20%. During the hearing, the plaintiffs objected to the proposed increase as excessive. In their complaint, however, the plaintiffs did not attack the amendment to Rule 131 as excessive or unreasonable, but rather contended that the Illinois Horse Racing Act (Ill.Rev.Stat. 1971, ch. 8, pars. 37a through 37r) gave the Board no power to fix the compensation of jockeys, and that if the Act were construed to grant such power it must be considered unconstitutional because of its failure to provide adequate standards to guide and control the Board in setting such fees.

In both its current and its earlier version, Rule 131 states that the schedule of fees is applicable "in the absence of a special agreement," and the parties interpret the rule as establishing only a minimum fee, leaving a horse owner free to contract with a jockey for compensation at a higher rate.

The Horse Racing Act contains no provision explicitly giving the Board the power to prescribe the fees or compensation payable to jockeys or to any other person engaged in horse racing, except for officials or other employees of the Board itself. Section 1.7 of the Act (Ill.Rev.Stat. 1971, ch. 8, par. 37a.7) provides in part:

> "The Board shall have full power to prescribe rules, regulations and conditions under which all horse races shall be conducted in the State of Illinois under this Act and reasonable rules and regulations regulating participants in horse racing meetings, providing for the prevention of practices detrimental to the public interest and the best interests of racing, and to impose penalties for violations thereof.
>
> "The Board shall have no right or power to determine who shall be officers, directors, or employees of any licensee, or the salaries thereof, except that the Board may, by rule, require that all or any officials or employees in charge of or whose duties relate to the actual running of races be approved by the Board."

This latter paragraph goes on to provide that the Board shall have the power to appoint stewards, veterinarians, revenue inspectors and certain other personnel to serve during the pleasure of the Board and at a compensation to be determined by the Board.

The trial court held that jockeys were employees of horse owners, and that since the latter, like race-track associations, are licensees under the Act (Ill.Rev.Stat. 1971, ch. 8, par. 37c—2), it followed that regulation of jockeys' fees was precluded by the first clause of the second paragraph of section 1.7. The appellate court, disagreeing, took the position that that clause did not apply to jockeys, on the ground that jockeys are among those persons whose duties clearly relate to the actual

running of races. The court reasoned that section 1.7, when read in the light of the balance of the Act, gave the Board "control" over persons falling in that category, and that such control necessarily included the power to set the compensation of jockeys, since the rate of compensation would affect their availability and quality and hence the running of races. The defendants suggest that the fees paid to a jockey do not in any event constitute a salary, since that term refers only to payments for services rendered for a definite period of time, but under the view we take this point need not be considered.

It is beyond question that the Board possesses extensive control over the manner in which races are conducted and over the qualifications and eligibility of the various participants, so as to assist the Board in insuring that the racing itself and the pari-mutuel betting permitted by the Act will be conducted honestly, and this, if only to protect the State's interest in the tax revenues accruing from admissions and from wagering. (See Ill.Rev.Stat. 1971, ch. 8, pars. 37e, 37j1.) However, without considering the effect of the absence of any finding by the Board that the quality of horse racing in Illinois has suffered from or was threatened by a lack of competent jockeys, we do not judge that the power to establish the compensation of jockeys or, for that matter, other persons not employed by the Board, can be found in the Act simply on the rationale that an increase in compensation may indirectly benefit horse racing. If jockeys are to be considered employees of licensees, as the trial court judged they were, the Board by the explicit terms of section 1.7 had no right to determine their compensation. If they are to be considered of a status other than employees, there is still no power to be found in the Board to set compensation. There is no authority conferred in the language of the Act, and the absence from the statute of any standards, criteria or procedure for determining compensation confirms that no power to make such determinations was intended by the legislature to be given the Board. We consider the legislative intention

was that the matter of compensation for jockeys was to be left to the normal processes of individual or collective bargaining.

Our view is reinforced by a consideration of the manner in which statutes that do regulate wages have been drawn. Except for those instances in which the legislature has set a specific figure in the statute itself, as in the act requiring minimum salaries for policemen and firemen (Ill.Rev.Stat. 1971, ch. 24, pars. 10—3—1, 10—3—2) and in the Minimum Wage Law of 1971 (Ill.Rev.Stat. 1971, ch. 48, pars. 1001 through 1015), the legislature has given the department or governmental agency involved a criterion or standard and a procedure by which the wage is to be determined. For example, the act which empowers the Department of Labor to set a minimum fair wage for women and minors in various occupations (Ill.Rev.Stat. 1971, ch. 48, pars. 198.1 through 198.17) defines that term, *viz.*, "a wage fairly and reasonably commensurate with the value of the services or class of service rendered" (Ill.Rev.Stat. 1971, ch. 48, par. 198.1). The Department's determination of such a wage is to be preceded by a recommendation from a wage board representing employers, employees, and the public, and by a public hearing before the Department (Ill.Rev.Stat. 1971, ch. 48, par. 198.6), and after a minimum wage has been determined and has been in effect for one year, the Department is expressly authorized to reconsider the rate and determine whether or not it should be modified. (Ill.Rev.Stat. 1971, ch. 48, par. 198.11.) This Act was upheld in *Vissering Mercantile Co. v. Annunzio, 1 Ill.2d 108,* except for section 13 (Ill.Rev.Stat. 1971, ch. 48, par. 198.13) which was held to be unduly narrow in limiting judicial review to questions of law.

There is also a minimum wage statute requiring payment to persons engaged in the construction of public works by public bodies of the "general prevailing hourly rate as paid for work of a similar character in the locality" (Ill.Rev.Stat. 1971, ch. 48, pars. 39s—1 through 39s—12).

Although earlier similar legislation on this subject had been held invalid as not providing a sufficient standard for the determination of what was in fact the prevailing wage (*Mayhew v. Nelson, 346 Ill. 381; Reid v. Smith, 375 Ill. 147*), the successor statute enacted in 1941 was upheld against that complaint in *Bradley v. Casey, 415 Ill. 576.*

The principle that the legislature cannot delegate its legislative authority without establishing controls or standards was illustrated in *Hepner v. County Board of School Trustees, 8 Ill.2d 235, 242,* where this court said that the legislature cannot give an agency "unlimited discretion to act when that discretion is not guided by standards under which it may be intelligently exercised." *Cf. People v. Federal Surety Co., 336 Ill. 472; People v. Beekman & Co., 347 Ill. 92.*

We would observe, too, that the specificity of provisions in the Horse Racing Act with respect to the amounts of purses, the allotment of racing days, and the qualifications of race track associations, horse owners, and other persons engaged in horse racing (see Ill.Rev.Stat. 1971, ch. 8, pars. 37a8, 37a9, 37b, 37c, 37—2), argues against a view that a power to set compensation for jockeys can be founded on nothing more than the highly generalized language of section 1.7. Such a construction of the section would allow the Board, with corresponding propriety and logic, to establish the amounts paid by or to other participants in racing meetings. We would note also that while the Act provides specifically for hearings in the case of Board action affecting licenses or applications for licenses (Ill. Rev.Stat. 1971, ch. 8, par. 37c—4), there are no provisions specifically addressed to the procedure for the establishment or alteration of a rate of compensation.

We do not intend through the preceding discussion to suggest any view as to the authority of the State to prescribe the fees or compensation to be paid in the business of horse racing, nor as to what provisions would be constitutionally required in the Act in order to avoid an objection based on a claim of an improper delegation of

legislative power. We hold only that under the Act as it is now drawn the Board lacked the power to enter the order involved here. And, of course, we do not intend to suggest the adequacy or inadequacy of the compensation provided jockeys.

In their brief in this court the defendants claim that the plaintiffs are foreign corporations not licensed to do business in this State and had no right to bring their action in the circuit court because of section 125 of the Business Corporation Act (Ill.Rev.Stat. 1969, ch. 32, par. 157.125). That section states in part: "No foreign corporation transacting business in this State without a certificate of authority shall be permitted to maintain an action at law or in equity in any court of this State, until such corporation shall have obtained a certificate of authority." The plaintiffs filed a motion to strike this portion of the defendants' brief, and we took the motion with the case.

It appears from the record that the Horsemen's Benevolent and Protective Association, which is a Rhode Island corporation, obtained a certificate of authority in November, 1970, whereas the complaint was filed in June of that year. A motion by the defendants to dismiss the complaint on this same ground was made in the circuit court but was denied on the ground that the motion was not supported by affidavit as required by section 48 of the Civil Practice Act and Rule 191 of this court (Ill.Rev.Stat. 1971, ch. 110, par. 48; ch. 110A, par. 191). It does not appear that the defendants appealed from that ruling, and, indeed, the defendants raised the question in the appellate court only in their reply brief. The objection, moreover, would have had no bearing on the right of the individual plaintiff, Harold Trimble, to bring suit. There is consequently no basis now to question the right of the plaintiffs to maintain their action in the circuit court. However, as there would be no realistic purpose in striking the portion of the defendants' brief relating to this point, the plaintiffs' motion is denied.

For the reasons given, the judgment of the appellate court is reversed. *Judgment reversed.*