OGDEN/FAIRMOUNT, INC., Plaintiff-Appellee, *v.* ILLINOIS RACING BOARD, Defendant-Appellant.—EAST ST. LOUIS JOCKEY CLUB, INC., Plaintiff-Appellee, *v.* ILLINOIS RACING BOARD, Defendant-Appellant.

(No. 74-193;

Fifth District—July 21, 1975.

William J. Scott, Attorney General, of Chicago (Jim E. Lavine and Stephen R. Swofford, Assistant Attorneys General, of counsel), for appellant.

Robert E. McGlynn, of Belleville, and Patrick S. O'Neill, of Alton, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the defendant, Illinois Racing Board (hereinafter "Board"), from orders entered by the circuit courts of Madison and St. Clair Counties reversing those portions of defendant Board's order which attached as a condition to the 1974 racing licenses granted the plaintiffs, Ogden/Fairmount, Inc., and East St. Louis Jockey Club, Inc., that plaintiffs not be permitted to charge more than 35 cents for their programs.

Each of the plaintiffs applied to the defendant Board for a racing license for the 1974 racing season. Defendant Board issued an order granting racing dates to the plaintiffs; however, attached to such grants were certain conditions, which included the condition that plaintiffs not charge more than 35 cents for their programs. The imposition of this condition was apparently premised on the defendant Board's finding that:

> "Total attendance has generally declined at all racing meetings in Illinois in recent years, partially as a result of increases in prices for admissions, parking, programs, and concessions, and the reduction of quality in racing programs at thoroughbred meetings, despite the addition of gimmick wagering."

As a result of this finding the defendant Board concluded:

> "The prices of admissions, parking, programs, and concession sales at all race tracks in Illinois have been sufficiently high in recent years to constitute one of the causes of the decline in attendance at both thoroughbred and harness meetings. Consequently, no applicants licensed in Illinois in 1974 will be permitted to raise any of their prices over 1973 levels without specific prior approval from the Board; and, East St. Louis Jockey Club, Inc. and Ogden/Fairmount, Inc., as a condition of receiving 1974 racing licenses, will not be permitted to charge more than thirty-five cents for their programs."

Thereafter, the defendant Board ordered, among other things, that:

> "9. The licenses to be issued to Ogden/Fairmount, Inc. and

East St. Louis Jockey Club, Inc. are conditioned upon the requirement that the prices to be charged for the programs to be sold by these two associations be no greater than thirty-five cents.

\* \* \*

32. As a condition to the issuance to all of the above listed applicants to whom dates have been allotted, no such applicant may charge a price for any goods or services during 1974 in excess of the price charged for the same goods and services in 1973 without specific prior approval from the Board."

Subsequently, the plaintiffs each filed a complaint for administrative review alleging that the action of the defendant Board was illegal. The plaintiffs presented the following reasons for reversal of defendant Board's actions:

(1) that the Legislature did not grant to the Board the power to regulate or control prices of admission, parking, programs and concessions;

(2) that Rule 79(a) (Thoroughbred Racing) and 5.32 (Harness Racing) requiring the Board to approve prices on admission, goods or services provided are illegal and unauthorized;

(3) that Rule 79(a) and 5.32 are unconstitutional because they do not contain adequate standards, criteria or procedures for the determination of reasonable prices, thereby denying the plaintiffs rights to due process and equal protection under the law;

(4) that such rules are arbitrary and capricious;

(5) that the Board's decision and order is arbitrary and capricious as it pertains to the plaintiffs;

(6) that the Board's decision deprives the plaintiffs of their property without due process of law;

(7) that the decision of the Board is contrary to the manifest weight of the evidence; and

(8) that the decision of the Board is discriminatory because it only applies to the plaintiffs.

The trial court after hearing arguments in each of the cases for administrative review, entered its orders reversing certain portions of defendant Board's order. Since the trial court's orders are substantially the same, we only find it necessary to set forth the pertinent portions of the order entered in favor of plaintiff Ogden/Fairmount, Inc. Before entering the "Order and Judgment of the Court," the trial court made the following findings:

"1. That the Rule of the Illinois Racing Board, Thoroughbred 79A, adopted on October 9, 1973, in relation to the approval by the Board of prices charged by the licensee, is in effect a rule

giving the Board authority to fix prices; that said Rule has not been authorized by any legislative act, nor has any criteria, standards, or guidelines been fixed by the Legislature as to prices and the enactment of said Rule is not within the authority of said Board,

2. That the Legislature cannot delegate its legislative authority without establishing controls or standards, and cannot give to the Illinois Racing Board, the unlimited discretion to act when that discretion is not guided by standards under which it can be intelligently exercised.

3. That the findings, dated 12/18/73 and affirmed 2/15/74, of the Board, in its Order, on page 9, paragraph 25, the conclusions in said Order, on page 11, paragraph 3, and the Order, on page 14, paragraph 9, and on page 17, paragraph 32, are without basis in law; and are founded on an arbitrary exercise of discretion without a hearing as to said matters and cannot be used to impose the conditions to granting of a license to the plaintiff.

4. That the findings of paragraph 25, page 9, is contrary to the manifest weight of the evidence, and based on pure conclusions, and could form no basis for the condition attached to the issuance of a license to plaintiff.

5. That paragraph 3 of the Conclusions in said Order, on page 11, is arbitrary and discriminatory as being imposed only on plaintiff and Cahokia Downs.

6. That plaintiff has not been accorded due process in that no proper hearing was accorded to plaintiff either in the formulation, or reasonableness of prices."

The trial court then concluded that that portion of defendant Board's order which granted plaintiff Ogden/Fairmount, Inc., a license to conduct 75 days of racing should be approved and affirmed and that that portion of such order which attached the condition that plaintiff Ogden/Fairmount, Inc., not be permitted to charge more than 35 cents should be reversed and such provision be stricken from the defendant Board's order and held for naught. A similar analysis yielded a like result with respect to plaintiff East St. Louis Jockey Club, Inc.'s "Complaint" for administrative review. The defendant Board has perfected appeals from the entry of each of the orders of the trial court and the cases have been consolidated on appeal.

The defendant Board raises the following contentions in its brief: (1) "Regulation of the racing industry constitutes a reasonable exercise of police power by the General Assembly"; (2) "The Legislature has properly delegated broad regulatory powers over the racing industry to

the Illinois Racing Board"; and (3) "Rule 79a of the Illinois Racing Board is clearly within the administrative power and authority conferred by the Illinois Racing Act."

As noted in plaintiff's brief the defendant Board does not attack either the trial court's findings that the portion of the Board's order which required the plaintiffs to charge no more than 35 cents for a program was an arbitrary exercise of discretion or the finding that such provision was "arbitrary and discriminatory as being imposed only on" the plaintiffs. Consequently, were we to hold that the defendant Board was lawfully empowered to establish the maximum prices that could be charged by the plaintiffs, we would, nevertheless, be compelled to hold that the defendant Board's failure to attack the above findings of the trial court constituted a waiver of such issue under Supreme Court Rule 341(e)(7) (Ill. Rev. Stat. 1973, ch. 110A, par. 341(e)(7)). Such a waiver would leave this Court no alternative but to affirm the trial court's order. However, in view of our conclusion that the Horse Racing Act (Ill. Rev. Stat. 1971, ch. 8, pars. 37a through 37r) gave the defendant Board no power to establish the maximum prices it attempted to establish in the instant case, we need not rely upon the defendant Board's waiver.

The defendant Board contends that sections 1 and 3 of the Horse Racing Act empower it to establish maximum prices that may be charged by the plaintiffs as conditions to their being granted racing licenses. We disagree.

Notwithstanding the broad discretion granted to the defendant Board by the Horse Racing Act, we find no legislative authorization to regulate the prices to be charged by its licensees. While we realize that the supreme court's decision in *Chicago Division of the Horsemen's Benevolent & Protective Association v. Illinois Racing Board*, 53 Ill.2d 16, 289 N.E.2d 421, is factually distinguishable, we find principles of statutory interpretation presented therein applicable in the instant case. In particular, we find the following language applicable:

> "There is no authority conferred in the language of the Act, and the absence from the statute of any standards, criteria or procedure for determining compensation confirms that no power to make such determinations was intended by the legislature to be given the Board.
>
>        \*     \*     \*
>
> The principle that the legislature cannot delegate its legislative authority without establishing controls or standards was illustrated in *Hepner v. County Board of School Trustees*, 8 Ill.2d 235, 242, where this court said that the legislature cannot give an agency 'unlimited discretion to act when that discretion is not guided by

standards under which it may be intelligently exercised.' *Cf. People v. Federal Surety Co.,* 336 Ill. 472; *People v. Beekman & Co.,* 347 Ill. 92.

We would observe, too, that the specificity of provisions in the Horse Racing Act with respect to the amounts of purses, the allotment of racing days, and the qualifications of race track associations, horse owners, and other persons engaged in horse racing (see Ill. Rev. Stat. 1971, ch. 8, pars. 37a8, 37a9, 37b, 37c, 37—2), argues against a view that a power to set compensation for jockeys can be founded on nothing more than the highly generalized language of section 1.7. Such a construction of the section would allow the Board, with corresponding propriety and logic, to establish the amounts paid by or to other participants in racing meetings. We would note also that while the Act provides specifically for hearings in the case of Board action affecting licenses or applications for licenses (Ill. Rev. Stat. 1971, ch. 8, par. 37c—4), there are no provisions specifically addressed to the procedure for the establishment or alteration of a rate of compensation." 53 Ill.2d 16, 19, 21, 289 N.E.2d 421, 423, 424.

Similarly in the instant case the power to establish the maximum prices that may be charged by licensees of defendant Board is not expressly granted by the Horse Racing Act. The defendant Board claims that such grant of authority can be derived from the generalized language in section 1 and 3 of the Horse Racing Act. However, as noted in *Chicago Horsemen's Association,* the Horse Racing Act establishes no standards, criteria, or procedure for such a grant of authority. Section 1 of the Act provides for "the powers necessary or proper to enable it [the Board] to carry out fully and effectually all the purposes of this Act  *  *  *" (Ill. Rev. Stat. 1971, ch. 8, par. 37a), and while section 3 of the Act states that revocation of a license by the Board shall be for the violation of a condition attached to a racing license "or for any other cause which the Board in its discretion may deem advisable *in the public interest*" (emphasis added) (Ill. Rev. Stat. 1971, ch. 8, par. 37c), the Act provides only that "races or race meetings conducted thereunder shall be subject to the rules, regulations and conditions from time to time prescribed by said Board  *  *  *" (Ill. Rev. Stat. 1971, ch. 8, par. 37c) without establishing *any* standards for the conditions which may be imposed upon licensees by the Board. Consequently, absent the establishment of standards by other sections of the Act, there are no standards to guide the defendant Board in its establishment or alteration of the maximum prices that may be charged by its licensees. A reading of the remaining sections of the Horse Racing Act reveals that the Act estab-

lished no such standards or guidelines. Under such circumstances, even if the legislature had intended to grant the Board "unlimited discretion" such grant would be invalid. (See *Hepner v. County Board of School Trustees*, 8 Ill.2d 235, 133 N.E.2d 39.) Since the language of the Horse Racing Act does not plainly show that this was the legislature's intention we feel constrained to avoid such a construction. See *City of Nameoki v. City of Granite City*, 408 Ill. 33, 38, 95 N.E.2d 920.

Also militating against such a construction is the specificity of the remaining portions of the Horse Racing Act. (See Ill. Rev. Stat. 1971, ch. 8, pars. 37a8, 37a9, 37b, 37c, 37c—2.) We believe it highly improbable that the legislature would set forth the other powers of the Racing Board with such specificity and omit any mention of the Board's power to establish maximum prices to be charged by the Board's licensees if the legislature had intended to grant such power to the Board.

Accordingly, we hold that under the Horse Racing Act as presently drawn the defendant Board lacked the power to promulgate rules which would enable it to condition the granting of a racing license upon a licensee's agreement not to charge more for programs than those amounts proscribed by the Board. We, therefore, affirm the orders entered by the trial courts.

Orders affirmed.

JONES, P. J., and CARTER, J., concur.