## Uptown Sales, Inc., v. Oliver

*George S. Black*, for appellant.

*Charles H. Davison*, for Sheriff of Franklin County.

WINGERD, P. J., October 26, 1948.—On July 16, 1948, Uptown Sales, Inc., a corporation operating a retail mercantile business in Chambersburg, Franklin County, Pa., which included the retail sales of sporting goods and athletic equipment, applied to the Sheriff of Franklin County for a license, under the Uniform Firearms Act, to sell firearms direct to the consumer. The sheriff refused to issue the license and applicant filed its petition in the Court of Quarter Sessions of Franklin County against the sheriff, praying for a reversal of his action denying it a license. The sheriff filed an answer, stating that he had refused the license because petitioner had been selling firearms direct to the consumer without a license, in violation of the Uniform Firearms Act of May 21, 1943, P. L. 485.

A hearing was held, in which it developed that in the latter part of November or the first week in De-

cember 1947, the sheriff, having been informed that petitioner was selling firearms without a license, had gone to the store of petitioner to give notice that it was violating the Uniform Firearms Act by selling firearms without a license. There is some difference in the testimony as to the person whom the sheriff saw at that time but it is uncontradicted that his notice came very promptly to the attention of the then president of the corporation, or to the person having charge of the store. After this time the sheriff received a complaint that a firearm had been delivered after he had given the notice. When the application for a license was filed, the sheriff having had this complaint after he had given notice of the violation of the act, refused petitioner's application for a license.

Petitioner produced testimony which showed that the officers of the corporation did not know that a license was required under the Uniform Firearms Act, believing that, as it had a United States firearms license and paid a United States tax on the firearms sold, that was all that was necessary. It was also testified that, after the notice of the sheriff's, no other firearms were sold, but that one firearm, which had been sold before the sheriff's visit but not paid for and which was being held until final payment was made, was delivered to the purchaser upon final payment, after the notice given by the sheriff; that this delivery was made because Mr. McClain, the then president, stated that it was his understanding that the sheriff had told them not to sell any more firearms but that since this one was sold, delivery should be made of it. It was also shown that Mr. McClain was no longer connected with the corporation; that the corporation had been reorganized, with some change in stock ownership but practically the same officer personnel as when Mr. McClain was president. It appeared that when Mr. McClain was president he was the controlling

factor in the operation of the business. These changes had taken place prior to July 16, 1948, when the application for a license was presented by the corporation to the sheriff.

Thomas K. Cassel, commercial manager of the radio broadcasting station in Chambersburg, WCHA; J. Robert Cromie, proprietor of two tobacco stores, engaged in the retail and wholesale business, one of which is located in the building adjoining the applicant's store, and Fred J. Brueggemann, secretary of the Chamber of Commerce of Chambersburg, were called and all testified that applicant, as operated by those in charge, had, on July 16, 1948, and has the reputation of being a lawfully operated business. No witnesses were called to show that applicant is not of good repute in any respect in this community.

The Uniform Firearms Act specifically provides:

"The chief or head of any police force or police department of a city, and, elsewhere, the sheriff of the county, shall grant to reputable applicants licenses, in form prescribed by the Commissioner of the Pennsylvania State Police, effective for not more than one (1) year from date of issue, permitting the licensee to sell firearms direct to the consumer, subject to the following conditions . . .": Section 628 of The Penal Code of June 24, 1939, P. L. 872, as amended, 18 PS 4628. The conditions are the manner in which sales are to be made and the records which must be kept of such sales. It will be noticed that the words "shall grant to reputable applicants" are used. The word "shall" is clearly mandatory so that the effect of the mandate of the statute is that the proper officer, in this case the sheriff, if applicant is reputable, must grant the license. There is no discretion placed in the sheriff if applicant is reputable. Of course, the sheriff has the right to decide whether or not he considers applicant reputable and, if he deems applicant not reputable, to refuse a license.

Applicant, by the act, is given the opportunity to present evidence before the court of quarter sessions to show that he or it is reputable. It does not seem to this court that there is anything ambiguous or uncertain about the provision of the Uniform Firearms Act in this respect. We must take the act as it is written and construe the words and phrases thereof according to their common and approved usage: The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551, art. III, sec. 33, 46 PS §533. There is nothing in the Uniform Firearms Act from which it can be concluded that the granting of licenses for the sale of firearms direct to the consumer is within the discretion of the officer empowered to grant them, in this case, the sheriff.

In the present case, as the sheriff, under the act, certainly has the right to determine, in the first instance, whether the person applying is "reputable" or not, he had a right to refuse the license, if, in his opinion, applicant was not reputable as the word is used in the act. He had some foundation for refusal on this ground. However, although ignorance of the law excuses no person, a perfectly reputable person can, through ignorance, innocently break the law. He is subject to the punishment provided for such violation but such action does not necessarily make him not a reputable person. Webster's New International Dictionary defines "reputable" as "Having, or worthy of, good repute; . . .", and the noun "repute", "Character reputed or attributed; reputation; . . .". In 54 C. J., 689, "repute", the noun, is defined as "Character attributed, public estimate, established opinion, reputation; . . .". The word "reputable" seems to be the same as having a good reputation, that is, a person who is reputable is a person having a good reputation, although it may also mean a person worthy of a good

reputation. However, in law the preferred meaning seems to be "having a good reputation".

Petitioner in this case, as I have said, called three witnesses, all of them necessarily having a rather wide knowledge of the business and business people of this community, and all of them testified that the business reputation of petitioner was good on July 16, 1948, and at the time of the hearing. No evidence was offered by respondent concerning the reputation of petitioner. Under these circumstances, the court finds that applicant was a reputable applicant at the time the application was made and at the time of the hearing. This being the case, under the clear words of the statute, petitioner is entitled to the license applied for.

Now, October 26, 1948, the action of the sheriff refusing to issue a license permitting Uptown Sales, Inc., to sell firearms direct to consumer, as provided in the Uniform Firearms Act, is reversed.