# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Grant Schmidt, Shot Tec, LLC, :
and Second Amendment Foundation, :
               Petitioners :
                :
          v. : No. 281 M.D. 2023
                : Argued: April 10, 2024
Colonel Christopher Paris, :
Commissioner Pennsylvania State :
Police, and Sean Kilkenny, Sheriff of :
Montgomery County, :
             Respondents :


BEFORE:[1]  HONORABLE RENÉE COHN JUBELIRER, President Judge
         HONORABLE ANNE E. COVEY, Judge
         HONORABLE CHRISTINE FIZZANO CANNON, Judge
         HONORABLE LORI A. DUMAS, Judge
         HONORABLE MATTHEW S. WOLF, Judge


**OPINION BY**
**JUDGE DUMAS**                 **FILED:  August 7, 2025**

Petitioners Grant Schmidt; Shot Tec, LLC; and Second Amendment Foundation (individually Schmidt, Shot Tec, and Foundation; and collectively Petitioners), have filed a petition for review (PFR) in our original jurisdiction,

---

[1] This case was originally argued before an *en banc* Court that included Judges Ceisler and Wojcik. Judge Ceisler's service with this Court ended on January 3, 2025, before the Court reached a decision in this matter. Judge Ceisler's retirement necessitated the post-argument removal of Judge Wojcik from the *en banc* panel, in order to ensure that this matter would be decided by an odd number of judges. *See* Section 112(a) of the Commonwealth Court Internal Operating Procedures (IOP), 210 Pa. Code § 69.112(a) (vesting the President Judge of the Commonwealth Court with authority to "structure the judicial membership of *en banc* Courts"); *see also* IOP Section 111, 210 Pa. Code § 69.111 (providing that "[a]n *en banc* Court shall consist of no more than seven Commissioned Judges").

through which they request declaratory[2] and injunctive relief against Respondents Colonel Christopher Paris, Commissioner Pennsylvania State Police (Commissioner); and Sean Kilkenny, Sheriff of Montgomery County (Sheriff), regarding a litany of laws and regulations that govern licensing and administrative inspections of retail firearms dealers, as well as regarding Sheriff's inspection policy implementing those laws and regulations.[3] Petitioners now seek summary relief in their favor on all counts, as does Sheriff, while Commissioner has elected to contest the PFR via preliminary objections. After thorough review, we overrule in part and sustain in part Commissioner's preliminary objections, grant Petitioners' application

---

[2] A declaratory judgment declares the rights, status, and other legal relations "whether or not further relief is or could be claimed." 42 Pa.C.S. § 7532.[] It has been observed that "[d]eclaratory judgments are nothing more than judicial searchlights, switched on at the behest of a litigant to illuminate an existing legal right, status or other relation." *Doe v. Johns-Manville Corp*[.], . . . 471 A.2d 1252, 1254 ([Pa. Super.] 1984). Stated otherwise, "[t]he purpose of awarding declaratory relief is to finally settle and make certain the rights or legal status of parties." *Geisinger Clinic v. Di Cuccio*, . . . 606 A.2d 509, 519 ([Pa. Super.] 1992)[.]

A declaratory judgment, unlike an injunction, does not order a party to act. This is so because "the distinctive characteristic of the declaratory judgment is that the declaration stands by itself; that is to say, no executory process follows as of course." [*Pet.*] *of Kariher*, . . . 131 A. 265, 268 ([Pa.] 1925).

*Eagleview Corp. Ctr. Ass'n v. Citadel Fed. Credit Union*, 150 A.3d 1024, 1029-30 (Pa. Cmwlth. 2016) (footnote omitted).

[3] Schmidt owns and operates Shot Tec, a firearms dealer located in Bala Cynwyd, Pennsylvania, which has obtained a Sheriff-issued dealer license and a federal firearms license from the Bureau of Alcohol, Tobacco, and Firearms (ATF); both Schmidt and Shot Tec are members of the Foundation. PFR, 6/19/23, ¶¶4-6. Schmidt also intends to seek additional dealer licenses from both Sheriff and ATF, so that he can operate a second "firearms-related business" in Bala Cynwyd. *Id.*, ¶4.

for summary relief in part and dismiss it as moot in part, and deny Sheriff's application for summary relief in part and dismiss it as moot in part.

## I. BACKGROUND

In order to properly contextualize Petitioners' claims, it is necessary for us to provide a brief overview of the relevant regulatory framework. Per Section 6112 of the Pennsylvania Uniform Firearms Act of 1995 (UFA), all retail dealers in this Commonwealth are prohibited from selling or transferring firearms, or having the intent to do so, without first obtaining a state-level license. 18 Pa.C.S. § 6112.[4] The General Assembly has devolved the responsibility for such licensing to each city's police chief and each county's sheriff, who are tasked with granting dealer licenses to "reputable applicants" and are vested with authority to revoke a license in the event a dealer fails to adhere to the attendant, UFA-imposed conditions. *Id.* § 6113.[5] Additionally, the General Assembly has concomitantly tasked the

---

[4] "No retail dealer shall sell, or otherwise transfer or expose for sale or transfer, or have in his possession with intent to sell or transfer, any firearm as defined in section 6113(d) (relating to licensing of dealers) without being licensed as provided in this chapter." 18 Pa.C.S. § 6112.

[5]    (a) General rule.--The chief or head of any police force or police department of a city, and, elsewhere, the sheriff of the county, shall grant to reputable applicants licenses, in [the] form prescribed by the Pennsylvania State Police, effective for three years from date of issue, permitting the licensee to sell firearms direct to the consumer, subject to the following conditions in addition to those specified in section 6111 (relating to sale or transfer of firearms), for breach of any of which the license shall be forfeited and the licensee subject to punishment as provided in this subchapter:
        (1) The business shall be carried on only upon the premises designated in the license or at a lawful gun show or meet.
        (2) The license, or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.
        (3) No firearm shall be sold in violation of any provision of this subchapter.

Pennsylvania State Police (PSP) with "promulgat[ing] the rules and regulations necessary to carry out this chapter, including regulations to ensure the identity, confidentiality[,] and security of all records and data provided pursuant hereto." *Id.* § 6111.5. PSP has done so, in relevant part, by issuing regulations regarding dealer license applications, as well as the licenses themselves. *See* 37 Pa. Code §§ 33.116-33.117. Of particular note, PSP's regulations dictate that, by filing a signed license application, a dealer "gives permission to the [PSP], or their designee, and the issuing authority to come to [their] business location and inspect the premises, records, and documents without a warrant, to ensure compliance with this chapter

---

(4) No firearm shall be sold under any circumstances unless the purchaser is personally known to the seller or shall present clear evidence of the purchaser's identity.

(5) A true record in triplicate shall be made of every firearm sold, in a book kept for the purpose, the form of which may be prescribed by the Pennsylvania State Police, and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other, and shall contain the information required by section 6111. The record shall be maintained by the licensee for a period of 20 years.

(6) No firearm as defined in section 6102 (relating to definitions) shall be displayed in any part of any premises where it can readily be seen from the outside. In the event that the Commissioner of the Pennsylvania State Police shall find a clear and present danger to public safety within this Commonwealth or any area thereof, firearms shall be stored and safeguarded pursuant to regulations to be established by the Pennsylvania State Police by the licensee during the hours when the licensee is closed for business.

(7) The dealer shall possess all applicable current revenue licenses.

. . . .

(c) Revocation.--Any license granted under subsection (a) of this section may be revoked for cause by the person issuing the same, upon written notice to the holder thereof.

18 Pa.C.S. § 6113.

[of the Pennsylvania Code], and the [UFA]." *Id.* § 33.116. Sheriff, who is responsible for dealer licensing in Montgomery County, has established a dealer inspection policy pursuant to PSP's regulations and the UFA. *See* PFR, Exs. A-B (Sheriff's letter to firearms dealers regarding inspections and inspection checklist); *see also id.*, Ex. C (newspaper article discussing Sheriff's policy).

It is precisely this regulatory frame which Petitioners challenge through their lawsuit. In Count I, they assert that Sections 6111.5, 6112, and 6113 of the UFA, as well as PSP's aforementioned licensing regulations[6] and Sheriff's inspection policy, facially contravene the non-delegation provision contained in article II, section 1 of the Pennsylvania Constitution.[7] PFR, ¶¶42-64. In Count II, Petitioners maintain that both 37 Pa. Code § 33.116 and Sheriff's inspection policy unconstitutionally authorize warrantless searches and seizures, in facial violation of article I, sections 8,[8] 25,[9] and 26[10] of the Pennsylvania Constitution. *Id.*, ¶¶65-72. In Count III, they allege that Sheriff's inspection policy facially infringes upon article I, sections 9,[11] 25, and 26 of the Pennsylvania Constitution, by compelling

---

[6] 37 Pa. Code §§ 33.116-33.117.

[7] "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." PA. CONST. art. II, § 1.

[8] "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." PA. CONST. art. I, § 8.

[9] "To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate." PA. CONST. art. I, § 25.

[10] "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." PA. CONST. art. I, § 26.

[11] In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against

licensees and their representatives, through the threat of losing their dealer licenses, to both answer Sheriff's questions and provide requested evidence upon demand. *Id.*, ¶¶73-79. Finally, in Count IV, Petitioners argue that Section 6113 of the UFA, 37 Pa. Code §§ 33.116, and Sheriff's inspection policy facially violate article I, section 1 of the Pennsylvania Constitution,[12] as they are unconstitutionally vague and transgress Petitioners' substantive due process rights. *Id.*, ¶¶80-96. Accordingly, Petitioners seek declaratory relief on all counts; a permanent injunction barring Respondents from enforcing any of the challenged provisions; and an award of costs and fees. *Id.*, Wherefore Clause.[13] Petitioners and Sheriff now respectively seek summary relief in their favor regarding each of the PFR's four claims, while Commissioner challenges each of the counts in which he is named (*i.e.*, Counts I, II, and IV) via preliminary objections.

---

him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

PA. CONST. art. I, § 9.

[12] "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, § 1.

[13] Petitioners also request "[a]ny other relief this Court may see fit [to dispense]." PFR, Wherefore Clause.

## II. DISCUSSION

### A. Commissioner's Preliminary Objections

We turn first to Commissioner's preliminary objections, through which he contests the PFR on multiple grounds.[14] First, he asserts that Petitioners lack standing and that their claims are not ripe, due to the fact that the laws, regulations, and inspection policy they seek to challenge have yet to be enforced against them. Comm'r's Br. at 7-11. Second, he demurs to Petitioners' non-delegation, unconstitutional search and seizure, and due process claims. *Id.* at 12-28. Finally, he maintains that Petitioners have failed to show that injunctive relief is necessary in order to prevent an injury that cannot be redressed through monetary damages, as well as that greater injury will occur if this Court elects to grant injunctive relief in Petitioners' favor. *Id.* at 28-29.

### *1. Petitioners' Standing and Ripeness*

We disagree with Commissioner's assertions that Petitioners both lack standing and have failed to assert claims that are currently ripe for adjudication. A

---

[14] In ruling on preliminary objections, this Court must "accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that [it] may draw from the averments." *Highley v. Dep't of Transp.*, 195 A.3d 1078, 1082 (Pa. Cmwlth. 2018). However, we are "not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Id.* This Court should sustain preliminary objections only where "the law makes clear that the petitioner cannot succeed on his claim." *Id.* at 1083.

"[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections." *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006).

*M.T. v. Pa. State Police*, 298 A.3d 466, 469 n.5 (Pa. Cmwlth. 2023) (cleaned up).

7

petitioner has standing to sue as long as they are aggrieved by the actions or matters which they seek to challenge. *Ams. for Fair Treatment, Inc. v. Phila. Fed'n of Teachers*, 150 A.3d 528, 533 (Pa. Cmwlth. 2016). In order to be "aggrieved," the petitioner's interest in the matter must be substantial, direct, and immediate. *Id.* A substantial interest "must be distinct from and surpass the interest of all citizens in procuring compliance with the law." *Id.* A direct interest requires "a causal connection between harm to the [petitioner's] interest and the alleged violation of law that is the subject of the action." *Id.* Finally, an immediate interest exists "if the causal connection is not remote or speculative." *Id.* The doctrine of ripeness is similar to that of standing, "especially where the contentions regarding lack of justiciability are focused on arguments that the interest asserted by the petitioner is speculative, not concrete, or would require the court to offer an advisory opinion." *Robinson Twp., Wash. Cnty., Pa. v. Com.*, 83 A.3d 901, 917 (Pa. 2013). Even so, standing and ripeness are not synonymous; rather, they "are distinct concepts insofar as ripeness also reflects the separate concern that relevant facts are not sufficiently developed to permit judicial resolution of the dispute. Pure questions of law . . . do not suffer generally from development defects and are particularly well suited for pre-enforcement review." *Id.*

We are not persuaded by Commissioner's assertion that Petitioners lack standing. Schmidt owns Shot Tec, which is licensed as a retail firearms dealer in this Commonwealth under the challenged legal framework. Shot Tec is located in Montgomery County and has obtained the necessary state-level dealer license from Sheriff and is subject to Sheriff's inspection policy. This gives both Schmidt and Shot Tec a substantial, direct, and immediate interest in the outcome here, which renders them aggrieved, despite the fact that Respondents have yet to take action

8

against them pursuant to the contested laws, regulations, or inspection policy. *Cf. Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 488-89 (Pa. 2021) (noting that "our jurisprudence in pre-enforcement declaratory judgment cases . . . has developed to give standing to [petitioners] to challenge laws before the laws have been enforced against them and before enforcement has been threatened"). This vests the Foundation with standing as well, due to Schmidt and Shot Tec's membership in that organization. *See Ams. for Fair Treatment*, 150 A.3d at 533 (an organization establishes associational standing by articulating "sufficient facts to show that at least one of its members has a substantial, direct and immediate interest").

Similarly, Respondents' failure to thus far take action against Petitioners has no bearing upon the ripeness of Petitioners' claims. As articulated above, each of Petitioners' claims presents threshold questions of law and constitutional interpretation that require no additional factual development. We therefore conclude that the entirety of the PFR is currently ripe for adjudication. *See Robinson*, 83 A.3d at 917.

*2. Non-Delegation Doctrine (Count I)*

We, however, agree with Commissioner that Petitioners have failed to state a viable facial constitutional challenge in Count I to PSP's legislatively delegated responsibilities.[15] It is beyond cavil that article II, section 1 of the

---

[15] It is well settled that "[a] statute is facially unconstitutional only where there are no circumstances under which the statute would be valid." *Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1041 (Pa. 2019). Furthermore, "[t]here is a strong presumption in the law that legislative enactments are constitutional. A court will not declare a statute unconstitutional unless the constitutional violation is clear, palpable, and plain[, and] will resolve all doubts in favor of constitutionality. Thus, a party challenging the constitutionality of a statute has a heavy burden of persuasion." *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1221 (Pa. Cmwlth. 2018) (cleaned up).

9

Pennsylvania Constitution both vests the General Assembly with exclusive authority to make law and bars it from delegating that authority to other entities. *State Bd. of Chiropractic Exam'rs v. Life Fellowship of Pa.*, 272 A.2d 478, 480 (Pa. 1971). Even so, the General Assembly "may, where necessary, confer authority and discretion in connection with the execution of the law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the act." *Belovsky v. Redevelopment Auth. of City of Phila.*, 54 A.2d 277, 284 (Pa. 1947). "The principal limitations on this power are twofold: (1) the basic policy choices must be made by the Legislature; and (2) the legislation must contain adequate standards which will guide and restrain the exercise of the delegated administrative functions." *Gilligan v. Pa. Horse Racing Comm'n*, 422 A.2d 487, 489 (Pa. 1980) (cleaned up); *accord Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827, 834 (Pa. 2017) (cleaned up) (such legislation must "contain some intelligible principle to which the person or body authorized to act is directed to conform"). This "rule requiring express legislative delegation is tempered by the recognition that [a governmental body] is invested with the implied authority necessary to the effectuation of its express mandates." *Com. v. Beam*, 788 A.2d 357, 360 (Pa. 2002); *accord Gilligan*, 422 A.2d at 489 (the non-delegation doctrine does not mandate that "all details of administration must be precisely or separately enumerated in the statute"); *see also Beam*, 788 A.2d at 361 (quoting *City of Columbia v. Board of Health & Env't Control*, 355 S.E.2d 536, 538 (S.C. 1987)) ("The delegation of authority to an administrative agency is construed liberally when the agency is concerned with the protection of the health and welfare of the public.").

Petitioners pursue their non-delegation claim against Commissioner on two bases. First, they assert that the challenged statutory provisions provide insufficiently specific guidance and standards to govern PSP's regulatory discretion. Second, they maintain that even if those standards are, in fact, constitutionally sound, PSP has exceeded that authority through its promulgated regulations, because the statutory guidance does not authorize inspections of dealer operations, regardless of whether those inspections are done with or without a warrant. PFR, ¶¶42-62.

Neither of these arguments is persuasive, however. The General Assembly has expressly provided PSP with rulemaking authority under the UFA, including the power to issue "regulations to ensure the identity, confidentiality[,] and security of all records and data provided pursuant hereto." 18 Pa.C.S. § 6111.5. In addition, the General Assembly has tasked PSP with establishing the form of the retail dealer license, and has provided a detailed, multi-part list of requirements that a licensee must abide by in order to remain in good standing. *See id.* §§ 6111, 6113. These laws provide constitutionally sufficient standards to cabin PSP's regulatory discretion. Furthermore, the substance of the challenged regulations falls comfortably within that statutorily authorized discretion. Though Petitioners take issue with the regulations' allowance for warrantless inspections of a licensee's business, such authorization implicitly flows from the General Assembly's aforementioned, express statutory directives regarding information verification; this is especially true, given the public safety concerns that are inherent to the sale of firearms. Similarly, while Petitioners take issue with PSP's instruction that licenses be issued only to "reputable applicants," that requirement simply echoes the language used by the General Assembly in Section 6113 of the UFA. *See* 18 Pa.C.S. § 6113(a). Accordingly, we conclude that Petitioners have failed to state a viable

11

non-delegation claim against Commissioner regarding Sections 6111.5, 6112, or 6113 of the UFA, or regarding PSP's dealer licensing regulations that are codified at 37 Pa. Code §§ 33.116-33.117.

### 3. *Warrantless Inspections (Count II)*

We also conclude that Petitioners have failed to articulate a viable claim against Commissioner regarding the warrantless inspection of licensees' business locations. "While it is well established that the police must possess probable cause to search a business premise when there is suspicion of illegal activity, an administrative search does not always require a showing of probable cause." *Com. v. Petroll*, 738 A.2d 993, 1000 (Pa. 1999). In keeping with this precept, owners of businesses that are closely regulated by the government "should have little or no expectation of privacy" and, depending on the particulars of the relevant regulatory framework, "should expect that their businesses would be subject to warrantless administrative searches." *Id.*

The industry of retail firearms sales is indisputably one that is closely regulated by the government. *See Crawford v. Com.*, 326 A.3d 850, 863-64 (Pa. 2024) (discussing "the UFA's relatively longstanding and comprehensive statutory scheme of firearms regulation[,]" including its provisions that pertain to dealer licensing); *United States v. Biswell*, 406 U.S. 311, 315-16 (1972) (retail firearms sales are closely regulated by the federal government). Accordingly, the warrantless inspection provision contained in 37 Pa. Code § 33.116 will not violate article I, sections 8, 25, and 26 of the Pennsylvania Constitution if it satisfies three requirements. "First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made. Second, the warrantless inspections must be necessary to further the regulatory scheme." *New*

12

*York v. Burger*, 482 U.S. 691, 702 (1987) (cleaned up).  Finally, "the . . . inspection program, in terms of the certainty and regularity of its application, [must] provide[] a constitutionally adequate substitute for a warrant." *Donovan v. Dewey*, 452 U.S. 594, 603 (1981).  "In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *Burger*, 482 U.S. at 703.[16]

37 Pa. Code § 33.116 complies with all three of these requirements. There is undoubtedly a substantial governmental interest underpinning our Commonwealth's licensing scheme, as tight regulation of retail firearms dealers is necessary to prevent undesirable individuals from obtaining weapons that will potentially facilitate criminal activity.  *See Biswell*, 406 U.S. at 315-16.  In addition, warrantless inspections are necessitated by the nature of retail firearms sales, as violations of the UFA are neither "difficult to conceal [nor] to correct in a short time." *Id.* at 316.  As such, dealer inspections will "be effective and serve as a credible deterrent" only in the event that they are "unannounced, even frequent." *Id.* "In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible." *Id.*  Finally, the challenged regulation authorizes a limited subset of government personnel (PSP or its designee) to conduct warrantless searches of a licensee's business location for expressly constrained purposes ("inspect[ion of] the premises, records, and documents . . . to

---

[16] Though this test was initially established in the context of Fourth Amendment claims, our Supreme Court has also adopted it for use regarding Pennsylvania Constitution-based warrantless inspection challenges.  *See Dep't of Env't Res. v. Blosenski Disposal Serv.*, 566 A.2d 845, 848 (Pa. 1989).

13

ensure compliance with [Chapter 37 of the Pennsylvania Code], and the [UFA]"). 37 Pa. Code § 33.116. This is a satisfactory substitute for a warrant, as the regulation "advise[s] the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and . . . limit[s] the discretion of the inspecting officers." *Burger*, 482 U.S. at 703. Petitioners have therefore failed to plead a viable unconstitutional search and seizure claim against Commissioner.

### 4. Due Process (Count IV)

Likewise, we conclude that Petitioners have failed to state a viable article I, section 1 claim against Commissioner. Petitioners press this due process argument forward on two tracks. First, they allege that Section 6113 of the UFA is unconstitutionally vague because the General Assembly failed to expressly define what qualifies as a "reputable applicant," "cause" for revoking a dealer license, or "a clear and present danger to public safety" that would require licensees to store and secure their firearms. PFR, ¶¶83-90. Second, they maintain that Section 6113 and 37 Pa. Code § 33.116 violate their substantive due process rights, because the former does not contain express definitions for "reputable applicant" or "cause," and the latter authorizes warrantless inspections of licensees' business operations. *Id.*, ¶¶91-96.

Neither of these positions survives even a cursory level of scrutiny, however. Generally speaking, "[a] law is void on its face if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Fabio v. Civ. Serv. Comm'n of City of Phila.*, 414 A.2d 82, 84 (Pa. 1980). This doctrine is rooted in "notions of fair notice [and] warning[,]" but comes with an important caveat: "Although at first blush a law may appear vague on its face and those subject to it without fair notice . . . [,] it may withstand a constitutional

14

challenge if it has been narrowed by judicial interpretation, custom[,] and usage[.]" *Id.* at 85. Indeed, a law or regulation is "not void for vagueness simply because the standard is general in nature[,] provided it conveys a sufficient warning as to prohibited conduct when measured against common understanding and practice." *Pinnacle Health Sys. v. Dep't of Pub. Welfare*, 942 A.2d 189, 192 (Pa. Cmwlth. 2008).

We address each of the highlighted phrases in turn. The meaning of "reputable applicants" in this context, as well as whether that phrase is unconstitutionally vague, are questions of first impression. "Reputable applicants" is not expressly defined in the UFA and no court has heretofore established its own definition; incredibly, Section 6113 has been cited in a grand total of four opinions since it was enacted 53 years ago, none of which contain any meaningful statutory analysis. *See Crawford*, 326 A.3d at 865; *Com. v. Cole*, 289 A.3d 89, 89 n.6 (Pa. Super. 2022); *In re Sportsman's Rendezvous Retail Firearms Dealer's License*, 866 A.2d 195, 202 (N.J. Super. App. Div. 2005); *Com. v. Schilling*, 431 A.2d 1088, 1091 (Pa. Super. 1981). Additionally, there is at least one opinion from a lower court that focuses upon identical language in a version of the UFA that predates the 1972 enactment of the Crimes Code, but it offers little assistance towards determining whether "reputable applicants" is impermissibly vague. *See Uptown Sales, Inc. v. Oliver*, 66 Pa. D. & C. 51, 53 (Quar. Sess. Franklin Co. 1949) (concluding that a reputable applicant for a firearms dealer license is, in the context of the UFA, one who currently has a good reputation).

Similar language is used in Section 6109 of the UFA, but that is of no help, either. That statute, in relevant part, vests sheriffs with authority to investigate each individual who applies for a personal license to carry firearms, in order to

determine whether "the applicant's character and reputation are such that the applicant will not be likely to act in a manner dangerous to public safety[,]" and directs sheriffs to deny an application in the event they conclude that an applicant's character and reputation fail to meet that standard. 18 Pa.C.S. § 6109(d)(3), (e)(1)(i). In addition, Section 6109 directs sheriffs to revoke an already issued license in the event the sheriff concludes that the license holder no longer has the requisite character and reputation. *Id.* § 6109(i). As with Section 6113, though, the UFA does not expressly define "reputation" in the context of Section 6109, and no cases exist in which our courts have settled upon a sufficiently specific definition in the General Assembly's stead. *See, e.g.*, *Caba v. Weaknecht*, 64 A.3d 39, 46 (Pa. Cmwlth. 2013) (noting that "character" and "reputation" are not synonymous, but nevertheless holding that a licensing authority need not prove both a lack of character and a lack of good reputation in order to justify revocation of a license to carry); *Morley v. City of Phila. Licenses & Inspections Unit*, 844 A.2d 637, 641 (Pa. Cmwlth. 2004) (affirming revocation of license to carry because record evidence supported conclusion that license holder lacked requisite character and reputation, but doing so without defining "reputation"); *Smith v. Nace*, 824 A.2d 416, 419 (Pa. Cmwlth. 2003) (same); *Tsokas v. Bd. of Licenses & Inspections Rev.*, 777 A.2d 1197, 1202 (Pa. Cmwlth. 2001) (same).

Despite this, the Supreme Court's discussion of reputation concerns in an analogous licensing scenario provides clear guidance that vitiates Petitioners' vagueness argument. In *Street Road Bar & Grille, Inc. v. Pennsylvania Liquor Control Board*, 876 A.2d 346 (Pa. 2005), the Supreme Court dealt with an appeal stemming from the Liquor Control Board's denial of a liquor license application

16

pursuant to Section 404 of the Liquor Code, 47 P.S. § 4-404.[17] Specifically, the Liquor Control Board, and the court of common pleas on *de novo* review, determined that the applicant failed to satisfy Section 404's requirement that they be "a person of good repute[,]" prompting the applicant to challenge that determination and our Court to subsequently reverse. *Street Road*, 876 A.2d at 347-48. The Supreme Court subsequently reversed our Court's decision and, in doing so, engaged in a thorough discussion regarding the meaning of repute. Noting that "[t]he requirement that the applicant for various forms of liquor licenses or permits be a 'reputable person' or person of 'good repute,' or that the establishment to be operated be a reputable one, is common throughout the Liquor Code[,]" as well as that "[t]he Code offers no explicit guidance on factors that may be deemed pertinent to assessing repute," the Supreme Court turned to the common usage of "repute," which it defined as "the account or consideration of a person held by others, *i.e.*, what people think of another, reputation." *Id.* at 356-57. The Supreme Court then discussed the difference between "character" and "reputation," as well as the potential for overlap between those two concepts in the context of the liquor licensing scheme, before ultimately settling upon a definition of "repute" that focused on the General Assembly's intent. *Id.* at 357-58. Specifically, the Supreme Court reasoned that

> [t]he "repute" of which the Code speaks can only be understood in terms of the purpose for which repute is to be considered, *i.e.*, to determine if issuance of a liquor license is appropriate. The question for the [Liquor Control] Board cannot be whether the applicant has a localized reputation as a "good guy" generally. Logically, the General Assembly was concerned with repute as it may be relevant to the responsibility which is a necessary concomitant of the privilege represented by the

---

[17] Act of April 12, 1951, P.L. 90, *as amended*.

17

license, *i.e.*, the "highest degree of responsibility [owed] to [one's] fellow citizens" which is assumed along with the license. [*Com. v. Koczwara*, 155 A.2d 825, 828 (Pa. 1959)]. The applicant's citation history in connection with other liquor licenses is extremely probative in order to accurately measure whether a person (or establishment) is reputable. A history of citations, and a consideration of the appropriateness of the applicant's response to those citations, may suggest a lack of regard for the liquor laws. A person lacking in such regard can hardly be deemed a person of good repute for purposes of securing a liquor license.

*Id.* The Supreme Court also went on to opine that "[a]rguably, the single most important factor in assessing fitness for the privilege of licensure is the applicant's Liquor Code performance and compliance in the past[,]" as well as that "the . . . criminal record of a liquor license applicant is relevant to an accurate assessment of reputation. . . . Like prior Liquor Code violations, . . . convictions speak to the applicant's law-abiding character." *Id.* at 358-59.

While this portion of *Street Road* was specifically concerned with the relevance of an applicant's citation history and criminal record for purposes of Section 404 of the Liquor Code's reputation requirement, the Supreme Court's reasoning on this point is nevertheless applicable to our case. As with liquor licensing, the General Assembly was undoubtedly "concerned with repute [in the context of firearms dealer licensing] as it may be relevant to the responsibility which is a necessary concomitant of the privilege represented by the license, *i.e.*, the highest degree of responsibility owed to one's fellow citizens which is assumed along with the license." *Id.* (cleaned up). Indeed, the UFA's comprehensive regulatory scheme evinces a clear intent to tightly control the sale and purchase of firearms, so as to ensure that disreputable people cannot secure weapons that could be used to facilitate criminal activities. *See Crawford*, 326 A.3d at 863-64. It

18

follows, then, that a "reputable applicant" in terms of Section 6113 of the UFA can be understood as one who does not have a criminal record or a history of violating the UFA's requirements; in other words, such an applicant can only be vested with the weighty privilege and responsibility inherent to selling firearms if they have a track record of being a law-abiding individual. Section 6113's "reputable applicants" requirement consequently establishes a definite standard that provides applicants with sufficient notice, such that Petitioner's claim that this phrase is unconstitutionally vague is without merit.

The remaining two terms are even more easily defined. "Cause" exists when a licensee breaches the conditions imposed upon them through Sections 6111 and 6113 of the UFA. *See* 18 Pa.C.S. § 6113(a). As for "clear and present danger," we have explained in other contexts that such a danger exists where the threat to public safety is real, imminent, and atypical. *See Armstrong Educ. Ass'n v. Armstrong Sch. Dist.*, 291 A.2d 120, 123 (Pa. Cmwlth. 1972). Accordingly, Petitioners have failed to articulate a valid vagueness-based due process claim against Commissioner.

The same is true for Petitioners' assertions regarding substantive due process.[18] In order "for substantive due process rights to attach[,] there must first be the deprivation of a property right or other interest that is constitutionally protected."

_____

[18] As our Supreme Court has explained, "[s]ubstantive due process is the esoteric concept interwoven within our judicial framework to guarantee fundamental fairness and substantial justice, and its precepts protect fundamental liberty interests against infringement by the government." *Khan v. State Bd. of Auctioneer Exam'rs*, 842 A.2d 936, 946 (Pa. 2004) (cleaned up).

> Probably the most important function of government is the exercise of the police power for the purpose of preserving the public health, safety[,] and morals, and it is true that, to accomplish that purpose, the legislature may limit the enjoyment of personal liberty and

*Khan*, 842 A.2d at 946. As Petitioners do not assert that Commissioner has caused them to suffer the deprivation of a constitutionally protected interest or property right, their due process claim against him fails on that basis as well.

### B. Petitioners' and Sheriff's Applications for Summary Relief

We now turn to Petitioners' and Sheriff's respective applications for summary relief.[19] Petitioners argue that they are entitled to declaratory judgments and permanent injunctive relief against Sheriff because, in Petitioners' view, his inspection policy clearly violates the non-delegation doctrine, authorizes unconstitutional warrantless inspections, infringes upon the prohibition against compelling self-incrimination, and contravenes the right to due process. Petitioners' Br. at 21-39. By contrast, Sheriff asserts that Petitioners lack standing and that their claims are not ripe, as well as that he is entitled to summary relief regarding each of those claims. Sheriff's Br. at 10-32.

---

property. It is also true . . . that the police power has been juridically extended to many fields of social and economic welfare. But [this] power is not unrestricted. . . . [A] law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests[,] the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.

*Gambone v. Com.*, 101 A.2d 634, 636-37 (Pa. 1954).

[19] Pennsylvania Rule of Appellate Procedure 1532(b) provides that "[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Pa. R.A.P. 1532(b). When considering an application for summary relief, we "must view the evidence in the light most favorable to the non-moving party and may enter judgment only if: (1) there are no genuine issues of material fact; and (2) the right to relief is clear as a matter of law." *Nw. Youth Servs., Inc. v. Dep't of Pub. Welfare*, 1 A.3d 988, 990 n.1 (Pa. Cmwlth. 2010).

As we have already discussed, Petitioners have standing and their claims are ripe. Furthermore, we agree with Petitioners that Sheriff's inspection policy clearly violates the non-delegation doctrine.[20] This is for three reasons. First, the scope of the policy's requirements regarding licensee questioning is entirely untethered from the authority that has been delegated to him. The policy mandates that a licensee or an authorized representative "will need to be available during the inspection *to answer any questions posed*[.]" PFR, Ex. A (Sheriff's letter to firearms dealers regarding inspections) (emphasis added). This is despite the fact that neither the relevant portions of the UFA nor the PSP's regulations expressly provide the Sheriff with such wide-ranging power. *See* 18 Pa.C.S. §§ 6111, 6113; 37 Pa. Code § 33.116. Sheriff certainly has "implied authority necessary to the effectuation of [his] express mandates[,]" *Beam*, 788 A.2d at 360, which in this instance undoubtedly encompasses some ability to question a firearms dealer and their representatives during the course of an inspection. However, it does not follow from this implied authority that Sheriff is free to ask *any* question he pleases, or to condition a licensed firearms dealer's ability to remain in good stead upon answering every question posed during an inspection, no matter how tangential.[21] Rather, the

___

[20] The non-delegation doctrine is usually applied in instances where the General Assembly has delegated authority to executive branch administrative agencies. *See Grimaud v. Pa. Ins. Dep't*, 995 A.2d 391, 405 (Pa. Cmwlth. 2010). However, this doctrine also applies to other governmental and non-governmental entities where they "play[] an important role in the statutory scheme at issue." *Id.* at 405-06. Such is the case here, where the General Assembly has explicitly tasked local law enforcement agencies with the responsibility to issue firearms dealer licenses and revoke any such license for cause, and the PSP has vested those local agencies with authority to conduct warrantless inspections of licensees' operations. 18 Pa.C.S. § 6113(a), (c); 37 Pa. Code § 33.116(c).

[21] It bears mentioning that Sheriff cannot compel a licensee or their designee to waive the constitutional right against self-incrimination, unless the affected individual has been provided with appropriate immunity from any prosecution that could result from their admissions. *See*

21

Sheriff's ability to question licensees falls within his delegated authority only in the event such questions directly relate to, and are specifically in furtherance of, his efforts to determine whether a licensee is in compliance with the relevant portions of the UFA and the PSP's regulations. *See id.*; *Belovsky*, 54 A.2d at 284; *Gilligan*, 422 A.2d at 489; *Protz*, 161 A.3d at 834. Similarly, the policy also dictates that a licensee or an authorized representative "will need to be available during the inspection . . . *to provide any requested documentation*." PFR, Ex. A (emphasis added). While PSP's regulations do give Sheriff the ability to inspect documents during the course of licensee inspections, 37 Pa. Code § 33.116(c), that does not mean that Sheriff is permitted to engage in a fishing expedition, whereby he can compel a licensee to divulge all documents that he sees fit to request. Rather, any documentation requests pass muster only to the extent they are unequivocally tied to the relevant statutory and regulatory licensing requirements.[22] Finally, the policy's grading system, through which a licensee is awarded points for each violation of the policy checklist's requirements and is ultimately classified in one of four categories[23]

---

*Lefkowitz v. Turley*, 414 U.S. 70, 82 (1973); *see also Dole v. City of Phila.*, 11 A.2d 163, 168 (Pa. 1940) (cleaned up) ("A statute which compels a person to incriminate himself or to disclose facts which would incriminate him is invalid. A statute requiring disclosure of particular facts or merely requiring a person to appear and answer as to particular facts is not violative of the privilege where the right to refuse to answer as to incriminating facts is not taken away.").

[22] For example, Question 6 on Sheriff's inspection checklist mandates that licensees must provide him with completed copies of ATF Form 4473 during the course of inspections, despite the fact that keeping such records is not a prerequisite for maintaining a state-level firearms dealer license in Pennsylvania. PFR, Ex. B; *see* 18 Pa.C.S. §§ 6111, 6113; 37 Pa. Code §§ 33.116-33.117; *see also* ATF Form 4473 - Firearms Transaction Record Revisions, BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, https://www.atf.gov/firearms/atf-form-4473-firearms-transaction-record-revisions (September 15, 2023) (Form 4473 must be submitted as part of the federal background check process in instances where an individual seeks to purchase a firearm from a federal firearm license holder).

[23] Fully compliant; minor corrective action needed; needs to take corrective action; or willfully negligent. PFR, Ex. B.

based upon their aggregate score, stands completely outside the statutory and regulatory scheme and appears instead to have been made up out of whole cloth. *See* PFR, Ex. B; 18 Pa.C.S. §§ 6111, 6113; 37 Pa. Code §§ 33.116-33.117. Consequently, we conclude that Sheriff's inspection policy does not comport with the authority with which he has been vested through the UFA and PSP's regulations and, thus, that the policy violates the non-delegation doctrine.

We also determine that this violation warrants the permanent enjoinment of Sheriff's inspection policy. "In general, to obtain a permanent injunction, a party must demonstrate that actual and substantial injury is likely in the future, because 'equity ordinarily will not enjoin an alleged harmful act where it is not reasonably certain of occurring.'" *City of Phila. v. Armstrong*, 271 A.3d 555, 567 (Pa. Cmwlth. 2022) (quoting *Curll v. Dairymen's Coop. Sales Assn.*, 132 A.2d 271, 274-75 (Pa. 1957)). Furthermore, "the party seeking relief 'must establish that his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested.'" *Kuznik v. Westmoreland Cnty. Bd. of Comm'rs*, 902 A.2d 476, 489 (Pa. 2006) (quoting *Harding v. Stickman*, 823 A.2d 1110, 1111 (Pa. Cmwlth. 2003)). In contrast to requests for preliminary injunctions, which require that a party establish its need to prevent immediate and irreparable harm, a permanent injunction is proper "if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law." *Buffalo Twp. v. Jones*, 813 A.2d 659, 663 (Pa. 2002) (quoting *Soja v. Factoryville Sportsmen's Club*, 522 A.2d 1129, 1131 (Pa. Super. 1987)).

In this instance, Petitioners have established that there is a reasonable likelihood that they will suffer future harm as a result of Sheriff's inspection policy,

because Sheriff is poised to apply the challenged policy during the course of his next inspection of Shot Tec's operations. *See* PFR, Ex. A (letter to licensed firearms dealers stating that Sheriff "recently developed a plan to inspect every licensed dealer within Montgomery County" and intended to inspect all such dealers' premises using the aforementioned checklist "within the next couple of weeks" after the letter's mailing date). Additionally, Petitioners have satisfied the three substantive requirements for permanent injunctive relief, due to the fact that we have determined that Sheriff's inspection policy violates the non-delegation doctrine. *See West Phila. Achievement Charter Elementary Sch. v. Sch. Dist. of Phila.*, 132 A.3d 957, 968 (Pa. 2016) (standard for obtaining permanent injunctive relief is satisfied where petitioner has established that an entity has acted, or intends to act, in a manner that violates the non-delegation doctrine, and petitioner seeks to prevent that entity from initiating or continuing such conduct); *cf. Pa. Builders Ass'n v. Dep't of Lab. & Indus.*, 284 A.3d 1287, 1306 (Pa. Cmwlth. 2022) (statute that contravenes non-delegation doctrine is void *ab initio*, cannot be enforced, and is properly enjoined on a permanent basis upon proper application for such relief, due unconstitutional nature of said statute).

### III. CONCLUSION

In accordance with the foregoing analysis, we overrule Commissioner's preliminary objections to Petitioners' standing and the ripeness of Petitioners' claims against him, but sustain his demurrers to Counts I, II, and IV of the PFR, dismiss the remainder of his preliminary objections as moot, and dismiss him from this action.[24] Furthermore, we grant Petitioners' application for summary relief in part (as to Count I of the PFR); deny Sheriff's application for summary relief in part (as to

---

[24] Our dismissal of Petitioners' claims against Commissioner obviates the need for us to address the remainder of Commissioner's preliminary objections.

24

Count I); declare Sheriff's inspection policy to violate the non-delegation doctrine and permanently enjoin its enforcement in its current state; and dismiss the remainder of both applications as moot.[25]

_____
**LORI A. DUMAS, Judge**

Judges McCullough and Wallace did not participate in this decision.

---

[25] We need not address the remainder of Petitioners' or Sheriff's arguments, because we have provided Petitioners with all of the practical relief they sought against Sheriff, *i.e.*, the enjoining of his inspection policy on a permanent basis. *See* PFR, Request for Relief. Furthermore, we stress that our disposition of this matter does not forever preclude Sheriff from inspecting licensed gun dealers' operations, but only holds that any such inspections must be in line with the limited authority that has been delegated to Sheriff by the General Assembly and PSP.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Grant Schmidt, Shot Tec, LLC, :
and Second Amendment Foundation, :
                    Petitioners :
                     :
           v. : No. 281 M.D. 2023
                     :
Colonel Christopher Paris, :
Commissioner Pennsylvania State :
Police, and Sean Kilkenny, Sheriff of :
Montgomery County, :
                    Respondents :

# **O R D E R**

AND NOW, this 7th day of August, 2025, it is hereby ORDERED:

1. Respondent Colonel Christopher Paris, Commissioner Pennsylvania State Police's (Commissioner) preliminary objections to Petitioners Grant Schmidt; Shot Tec, LLC; and Second Amendment Foundation's standing and the ripeness of Petitioners' claims are OVERRULED;

2. Commissioner's demurrers to Counts I, II, and IV of Petitioners' Petition for Review (PFR) are SUSTAINED;

3. The remainder of Commissioner's preliminary objections are DISMISSED AS MOOT;

4. Petitioners' application for summary relief is GRANTED IN PART (as to Count I of the PFR);

5. Respondent Sean Kilkenny, Sheriff of Montgomery County's (Sheriff) application for summary relief is DENIED IN PART (as to Count I);

6.  Declaratory judgment is GRANTED in Petitioners' favor regarding their assertion that Sheriff's inspection policy violates the non-delegation doctrine;

7. Petitioners' request that Sheriff's inspection policy be permanently enjoined in its current state is GRANTED;

8. The remainder of Petitioners' and Sheriff's applications for summary relief are DISMISSED AS MOOT.

_____
**LORI A.  DUMAS, Judge**